UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

OCEANIA CRUISES, INC.,

    Plaintiff,                                      **JURY TRIAL DEMANDED**

v.

WORLD ART AUCTIONS, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff Oceania Cruises, Inc. ("Oceania"), by counsel, alleges for its Complaint against defendant World Art Auctions, LLC ("World Art"), upon knowledge with respect to its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THIS ACTION

1.    Oceania and World Art entered into a Concession Agreement on or about November 5, 2012 (the "Agreement"), pursuant to which Oceania granted World Art a concession to auction artwork on certain of Oceania's vessels and, in return, World Art was required to make certain payments to Oceania and to deliver sold artwork to Oceania's guests. World Art is in material breach of the Agreement for failing to pay amounts past due and owing under the Agreement, including the Monthly Guaranteed Commissions (as that term is defined in the Agreement). Moreover, World Art's negligence and gross mismanagement in delivering sold artwork to Oceania's guests has required Oceania to incur substantial costs and expenses, which World Art is required to reimburse Oceania for under the Agreement and otherwise. A copy of the Agreement is attached hereto as Exhibit A.

{28262613;2}

## THE PARTIES

2. Oceania is a Panamanian business entity authorized to do business in Florida and with its principal place of business in Miami, Florida.

3. Upon information and belief, World Art is a Michigan limited liability company with its principal place of business in Lake Orion, Michigan.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this controversy pursuant to the diversity statute, 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00 in value, exclusive of interest and costs, and is between citizens of different states.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, because this action arises under the admiralty and maritime laws of the United States. This action alleges breaches of a maritime contract subject to the Court's admiralty contract jurisdiction.

6. World Art is subject to the personal jurisdiction of this Court pursuant to Section 48.193, Florida Statutes, and otherwise, because it is engaged in substantial and not isolated activity within this District. World Art maintains an office in Hollywood, Florida, operates, conducts, engages in, or carries on a business or business venture in Florida, and its conduct has caused significant damage to Oceania in Florida. Moreover, the Agreement contains a mandatory forum selection clause whereby World Art agrees that an action such as this shall be brought in this District. *See* Agreement at § 17.1.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. Moreover, the mandatory forum selection clause provides that World Art consents to venue in this District. *See* Agreement at § 17.1.

## BACKGROUND FACTS

### The Agreement

8. On or about November 5, 2012, Oceania and World Art entered into the Agreement. Agreement at 1.

9. Under the Agreement, Oceania granted World Art certain Concessions (as defined in the Agreement), including but not limited to a Concession for the auction of artwork. *Id*. at § 1.2. Subject to certain narrow exceptions set forth in the Agreement, the Concessions were exclusive to World Art. *Id*. at §§ 2.1-2.2.

10. World Art is obligated under the Agreement to "conduct its business activities in a professional, reputable manner, in good faith in order to carry an adequate stock of Artworks and to maintain competitive pricing, and to perform the Services." *Id*. at § 2.3.

### The Concession Fee

11. For a period of time from the Rollout Date to the Start Date for each vessel, which dates are specifically set forth in Exhibit C to the Agreement, the Agreement provides the following schedule for Percentage Commissions payable by World Art to Oceania:

> 4.1  Concession Fee. it is understood and agreed that all such sales on board the Vessel will be charged by guests to their master Shipboard Account, while all sales onshore, if any, shall be accounted for by Concessionaire's normal business practices. Grantor will collect funds from the guests and Concessionaire will pay to Grantor the Commission Fee as follows:
>
> (a)  From the Rollout Date up to the Start Date for each Vessel (as defined in Exhibit C), an amount equal to the applicable percentages of Gross Revenue generated from the sale of a piece of Artwork on an individual basis according to the corresponding rent bin:
>
>> (i)  thirty-two percent (32%) if priced at or between US$0 and US$99.99;
>>
>> (ii)  twenty-nine percent (29%) if priced at or between US$100 to $1000;

(iii)  twenty-five percent (25%) if priced at or between US$1000.01 to $10,000;

(iv)  twelve percent (12%) if priced at or between US$10,000.01 to $25,000;

(v)  ten percent (10%) if priced at or between US$25,000.01 to $50,000;

(vi)  eight percent (8%) if priced at or between US$50,000.01 to $100,000;

(vii)  five percent (5%) it- priced at or over $100,000.01 (collectively, the "Percentage Commission").

12. After the Start Date, World Art is required to pay Oceania "the greater of the Percentage Commission or the Monthly Guaranteed Commission. Provided, to the extent the Percentage Commissions on any Vessel exceed the Monthly Guaranteed Commission for such Vessel, the amount of such excess shall reduce, with respect to the other Vessel(s), if any, the amount owed as the Monthly Guaranteed Commission up to but not in excess of the difference between the Monthly Guaranteed Commissions and the Percentage Commissions on such other Vessel(s)." *Id*. at § 4.1(b).

13. The amount of the Monthly Guaranteed Commissions for each vessel is set forth in Section 4.1(d): $33,333.34 for the M/V Riviera, $16,666.66 for the M/V Regatta, $16,666.66 for the M/V Nautica, and $33,333.34 for the M/V Marina.

14. Pursuant to Section 4.4, Oceania and World Art agreed to "an annual reconciliation to true up the Monthly Guaranteed Commissions."

15. On January 2, 2014 Oceania presented World Art with the annual reconciliation for the prior year, which established that World Art owed Oceania $543,687.23, representing the annual true-up to Monthly Guaranteed Commissions less offsetting sums retained by Oceania.

16. On January 6, 2014, in an e-mail from World Art's principal, Eugene Schuster ("Schuster"), to the President of Oceania, Schuster admitted that World Art was "unable to pay this large sum by January 9th," the date on which payment was due.

17. On January 13, 2014, Oceania advised World Art that it was exercising its right to cancel the Agreement, pursuant to Sections 14.1(c)(i) and 14.2, based upon World Art's admission that it was unable to pay the debts owed to Oceania. A copy of the letter dated January 13, 2014 is attached hereto as Exhibit B.

18. In particular, Section 14.1 of the Agreement states in relevant part as follows:

> 14.1 <u>Events of Default</u>. The occurrence of any of the following events shall constitute an "Event of Default":
>
> (a) Either party shall fail to perform or comply with any of its covenants, duties or obligations hereunder, or shall violate any of the prohibitions imposed under this Agreement, or shall breach any of such party's warranties made in this Agreement, and such a failure, violation or breach shall continue for a period of ten (10) days after the other party has given written notice thereof in accordance with Article 16; or
>
> (b) Any statement, representation or warranty of either party contained in this Agreement or in any document furnished to the other party pursuant hereto shall prove to be knowingly or recklessly untrue or incorrect in any material respect when made; or
>
> (c) Either party shall: (i) be unable to pay or admit in writing its inability to pay its debts as they mature. . . ."

19. Section 14.2 provides that the non-defaulting party, Oceania, may cancel the Agreement upon the occurrence of an Event of Default and may seek damages.

20. Oceania has since incurred additional costs, including but not limited to costs associated with the repatriation of World Art's crew following Oceania's breach of the Agreement. Pursuant to Section 9.1 of the Agreement, World Art is responsible for the payment of all repatriation expenses for its Staff. Moreover, Section 14.3 of the Agreement requires World Art to

reimburse Oceania "for any and all expenditures" incurred as a result of Oceania's efforts to remedy a breach by World Art.

**Oceania is Incurring Additional Costs as a Result of**
**World Art's Breaches of the Agreement and its Negligence**

21. Following World Art's breach of the Agreement, Oceania has worked diligently to assist World Art in the offloading of artwork, including the items sold to Oceania's guests who have already paid and are awaiting receipt of their artwork.

22. Rather than working with Oceania to facilitate a smooth process for the shipment of artwork already purchased, World Art has compounded its prior material breaches by acting negligently in distributing the artwork to Oceania's guests.

23. Upon information and belief, World Art may have sold the same piece of artwork multiple times and may have failed to pay the owner or artist that consigned the artwork to World Art even though the artwork had been sold. At the very least, World Art is grossly negligent in how it has handled its business under the Agreement and such negligent acts are continuing to cause damage to Oceania.

24. Oceania has received letters from at least four purported owners of artwork purportedly consigned to World Art claiming that they, and not World Art, are the owner of the artwork and seeking to retrieve the artwork directly from Oceania. The situation created by World Art and its failure to conduct its business in a professional, reputable manner (as required by Section 2.3 of the Agreement), continues to harm Oceania.

25. In addition, World Art refuses or is unable to ship sold artwork to Oceania's guests who have already purchased that artwork.

26. Section 11.1 of the Agreement provides as follows:

> 11.1   <u>Indemnity by Concessionaire</u>. Concessionaire shall indemnify, defend, and hold harmless Grantor and the Owner and their employees, officers, directors, crew,

{28262613;2}                                              6

and agents for, from and against any claims, costs, expenses, suits, liabilities, losses, and liens of any nature, including reasonable attorneys' fees incurred in the defense thereof, asserted against the Grantor, the Owner, or the Vessel which arise out of Concessionaire's operations and services and which are caused by any negligent act or omission of Concessionaire or Concessionaire's Staff.

27.  All conditions precedent to bringing this action have been performed, have been waived, or have occurred.

28.  Oceania has retained the undersigned counsel to represent it in this action and is obligated to pay its counsel a reasonable fee for services rendered and costs incurred on its behalf for which World Art is responsible.

## COUNT I
### (Breach of Contract)

29.  Paragraphs 1 through 27, inclusive, are incorporated herein by reference.

30.  World Art has substantially and materially breached the Agreement by, among other things, (i) failing to pay the Monthly Guaranteed Commission, as required by Section 4.1(b) of the Agreement; (ii) failing to "conduct its business activities in a professional, reputable manner," as required by Section 2.3; and (iii) failing "to perform the Services," as required by Section 2.3.

31.  As a direct and proximate result of World Art's breach of the Agreement, Oceania has incurred actual and substantial damages, and will continue to incur damages, in an amount to be determined at trial, but not less than $543,687.23.

32.  Oceania has fully performed all of its obligations under the Agreement.

## COUNT II
### (Negligence)

33.  Paragraphs 1 through 27, inclusive, are incorporated herein by reference.

34.  World Art owed a duty of care to Oceania to perform its obligations under the Agreement in a professional and reputable manner.

35. Upon information and belief, World Art breached its duty of care by, among other things, (i) selling the same piece of artwork multiple times, (ii) failing to pay the owner or artist that consigned the artwork to World Art even though the artwork has been sold, and (iii) failing to ship sold artwork to Oceania's guests.

36. As a direct and proximate result of the negligence of World Art, Oceania has incurred actual and substantial damages, and will continue to incur damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Oceania Cruises, Inc. respectfully prays that the Court enter judgment in its favor and against World Art, as follows:

A. With respect to Counts I and II, damages incurred by Oceania, together with pre- and post-judgment interest, attorneys' fees (pursuant to Section 14.4 of the Agreement and otherwise), and costs; and

B. An Order granting such other and further relief to Oceania as the Court deems just, proper, equitable, and/or appropriate.

## JURY DEMAND

Oceania hereby demands trial by jury as to all issues triable by right to a jury.

|  | Respectfully submitted, |
|---|---|
| Date: March 5, 2014 | **AKERMAN LLP**<br>One Southeast Third Avenue<br>Suite 2500<br>Miami, FL  33131-1714<br>Telephone:  (305) 374-5600<br>Facsimile:  (305) 374-5095 |

By: <u>s/Ryan Roman</u>
   MICHAEL C. MARSH
   Florida Bar No. 0072796
   Primary e-mail: michael.marsh@akerman.com
   Secondary e-mail: sharon.luesang@akerman.com
   RYAN ROMAN
   Florida Bar No. 025509
   Primary e-mail: ryan.roman@akerman.com
   Secondary e-mail: dorothy.matheis@akerman.com

*Attorneys for Plaintiff Oceania Cruises, Inc.*